**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | Case No.  12-38016 |
| | § | |
| LARRY GREEN AND EDRIS GREEN | § | Chapter 13 |
| Debtor(s) | § | |
| | § | |
| LARRY GREEN AND EDRIS GREEN | § | |
| Plaintiff | § | |
| | § | Adv. Proc. No. 18-03351 |
| v. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC | § | |
| Defendant | § | |

## AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Larry and Edris Green file this *Amended* Complaint seeking damages and sanctions from Ocwen Loan Servicing, LLC, for its intentional and willful violations of this Court's Orders, and respectfully show the court the following:

## SUMMARY OF FACTS AND LAW

Ocwen has been sanctioned by bankruptcy courts from across the country for its intentional violation of bankruptcy court orders.  Ocwen recently made the following disclosures to the SEC: 1) Ocwen is aware of its obligation to comply with federal and local bankruptcy rules; 2) Compliance with federal and local bankruptcy rules is challenging for Ocwen; and 3) In the "ordinary course of business", Ocwen is sued by Plaintiffs who allege violations of bankruptcy rules.

The Plaintiffs in this case are no different than countless other Debtors who successfully completed their Chapter 13 plans, and soon after receiving their discharge, receive foreclosure notices from Ocwen. The Debtors seek actual damages, punitive damages, sanctions, and injunctive relief for Ocwen's intentional violation of this Court's Confirmation Order, Order Deeming Mortgage Current, and the Discharge Injunction.

1

JURISDICTION AND VENUE

1. The Bankruptcy Court has jurisdiction over this action under 28 U.S.C. §1334 and under the Order of Reference of bankruptcy cases and proceedings under 28 U.S.C. §157.

2. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) & (O). To the extent necessary, Plaintiffs consent to the entry of final orders or judgment in this adversary proceeding by the United States Bankruptcy Judge.

3. This adversary proceeding relates to the chapter 13 bankruptcy case, *In re Green,* Case No. 12-38016, in the United States Bankruptcy Court for The Southern District Of Texas, Houston Division.

PARTIES

4. Edris and Larry Green (the "Debtors" or the "Greens") are chapter 13 debtors in the related bankruptcy case.

5. Defendant Ocwen Loan Servicing, LLC is a Delaware limited liability company that may be served with process through its registered agent – Corporation Service Company, d/b/a CSC – Lawyers Inco, Suite 620, 211 E. 7th St., Austin, TX 78701.

# FACTS

RELATIONSHIP AMONG THE OCWEN ENTITIES

6. Ocwen Financial Corporation ("OFC") is a publicly traded Florida corporation.

7. OFC, through its subsidiaries, originates and services loans.

8. OFC, the parent and publicly-traded company, wholly owns all of the common stock of its primary operating subsidiary, Ocwen Mortgage Servicing, Inc. ("OMS").

9. OMS wholly owns the stock of Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant").

THE GREENS FILED BANKRUPTCY AND CURED THEIR MORTGAGE DELINQUENCY

10. The Debtors filed a Chapter 13 Bankruptcy on October 31, 2012. (*See Exhibit A*)

11. The Debtors reside at 19923 Moonriver Drive, Humble, TX 77338 ("Debtors' Homestead").

12. Only Ms. Green (the "Debtor") executed the Note secured by the Debtors' Homestead.

13. On May 20, 2014, a proof of claim was originally filed by GMAC Mortgage which was subsequently amended by Ocwen, as the new servicer. (*See Exhibit B*)

14. The Debtors did not choose their mortgage servicer and have no control over how Ocwen

2

services their loan.

15.     The Green's Chapter 13 Plan was confirmed on March 26, 2013, and was never modified. *See Exhibit A (Docket) and Exhibit C (Confirmation Order).*

16.     The Chapter 13 Trustee filed a *Notice of Final Cure Payment and Motion to Deem Mortgage Current* on October 17, 2017 (*See Exhibit D*) and a *Notice of Plan Completion* on November 1, 2017. *(See Exhibit E)*

17.     On November 6, 2017, Ocwen filed a response to the *Trustee's Motion to Deem Mortgage Current* disagreeing that the Greens had cured their prepetition default, but agreeing that the Debtors were current post-petition. *(see Exhibit F)*

18.     On November 16, 2017, a hearing was held on the Trustee's *Motion to Deem Mortgage Current*.  Ocwen appeared and agreed that Ms. Green cured any pre-petition default and was contractually current and due for the November, 2017 mortgage payment.

*(See Exhibit A – Docket 181 – Docket Entry Notes)*

19.     On December 27, 2017, this Court entered an *Order Deeming the Mortgage Current* which held that the Debtor's mortgage was deemed current through October 31, 2017. (*See Exhibit G*)

20.     On January 22, 2018, the Greens received their Chapter 13 discharge. (See *Exhibit H*)

**THE GREENS MADE ALL OF THEIR MORTGAGE PAYMENTS BEGINNING NOVEMBER 1, 2017 UNTIL OCWEN REFUSED TO ACCEPT PAYMENTS**

21.     Ms. Green was required to make monthly mortgage payments directly to Ocwen beginning November 1, 2017.

22.     Below is an outline of the payments made by the Debtors to Ocwen, starting in November, 2017:

| DATE PAYMENT MADE | AMOUNT OF PAYMENT MADE BY THE DEBTORS TO OCWEN |
|---|---|
| 11-9-2017 | $790.66 |
| 12-8-2017 | $786.14 |
| 1-2-2018 | $786.14 |
| 2-14-2018 | $790.66 |
| 3-2-2018 | $790.66 |
| 4-17-2018 | $790.66 |
| 5-2-2018 | $906.96 |
| 6-19-2018 | $839.41 |

| DATE PAYMENT MADE | AMOUNT OF PAYMENT MADE BY THE DEBTORS TO OCWEN |
| --- | --- |
| 7-6-2018 | $839.41 |
| 8-2018 through Today | Ocwen refused to accept payments and initiated foreclosure proceedings |

23.     As outlined above, from November, 2017 through July 6, 2018, the Debtors made the required monthly mortgage payments to Ocwen.  (*See Exhibit I*)

24.     Starting in August, 2018, Ms. Green contacted Ocwen numerous times in order to pay the monthly mortgage payments, but each time Ocwen refused to accept Ms. Green's payment. Nearly every time that Ms. Green spoke to an Ocwen representative, Ms. Green informed Ocwen that she had successfully completed a chapter 13 bankruptcy. Below is a summary of the phone conversations that occurred between Ms. Green and various Ocwen representatives:

| DATE | OCWEN AGENT | SUMMARY OF THE CALL BETWEEN OCWEN AND MS. GREEN |
| --- | --- | --- |
| 8-2-2018 | Ocwen Agent | Agent informed Ms. Green that she was delinquent in the amount of $3,659.54 and that Ocwen would no longer accept payments. |
| 8-16-2018 | Agent No. 109319 | Agent refused to accept Ms. Green's August, 2018 mortgage payment. |
| 9-4-2018 | Agent No. 106127 | Agent informed Ms. Green that foreclosure proceedings were initiated and Ms. Green was delinquent in the amount of $4,543.00.  Ocwen refused to accept payments. |
| 9-10-2018 | Agent No. 107213 | Ms. Green attempted to make a payment, but the Agent refused to accept. |
| 9-27-2018 | Agent No. 10626 (Relationship manager named Flor) | Agent refused to accept Ms. Green's payment and informed her she was delinquent $5,556.85, which consisted of six months of past due payments (April – August, 2018). |
| 9-27-2018 | Agent No. 140425 (Victoria) | Agent explained that Ocwen was aware of the completed bankruptcy, and could not accept payments because the delinquency (i.e. $5,556.85 – 179 days past due) Ocwen's policy does not allow them to accept payments once they are 90 days past-due.  Ms. Green was provided 3 options:<br>1) Pay the $5,556.85 deficiency;<br>2) Modify the loan; or<br>3) Enter into repayment<br>The agent told Ms. Green that "*A repayment plan is like a band-aid and a modification is a permanent solution to start fresh.*" |

25.     On September 27, 2018, Ms. Green contacted Ocwen to understand how Ocwen was applying the money it received from the Debtors. The Ocwen representative (Agent 140425) specifically explained to Ms. Green that Ms. Green's monthly payments were being applied toward previous months due to her deficiency (months that were provided for in her confirmed Chapter 13 plan).  The Ocwen representative explained the following to Ms. Green:

| DATE PAYMENT RECEIVED BY OCWEN | AMOUNT OF PAYMENT RECEIVED FROM THE DEBTORS | HOW SPECIFIC PAYMENT WAS APPLIED BY OCWEN TO DEBTOR'S ACCOUNT |
|---|---|---|
| 11-9-2017 | $790.66 | November, 2017 payment was applied to April, 2017. |
| 12-8-2017 | $786.14 | December, 2017 payment was applied to May, 2017. |
| 1-2-2018 | $786.14 | January, 2018 payment was applied to June, 2017. |
| 2-14-2018 | $790.66 | February, 2018 payment was applied to July, 2017. |

**POST-DISCHARGE LETTERS SENT BY OCWEN TO THE DEBTOR**

26.     After receiving their Chapter 13 discharge, the Debtor received the following written communications from Ocwen attempting to collect money that was deemed cured by this Court:

| DATE OF LETTER | SUMMARY OF COMMUNICATION FROM OCWEN | ATTACHED EXHIBIT: |
|---|---|---|
| 1-25-2018 | Bill from Ocwen attempting to collect $2,312.20 as an unpaid balance | J |
| 2-23-2018 | Bill from Ocwen attempting to collect $2,312.20 as an unpaid balance. | K |
| 3-28-2018 | Bill from Ocwen attempting to collect $3,162.64 as an unpaid balance. | L |
| 6-5-2018 | Bill from Ocwen attempting to collect $663.76 as an unpaid balance. | M |
| 7-12-2018 | Letter from Ocwen to the Debtor asserting that the Debtor has not made mortgage payments from 03-01-2018 through 07-01- | N |

| | | |
|---|---|---|
| | 2018, and that Ocwen has the right to foreclose on her home. | |
| 7-17-2018 | Bill from Ocwen attempting to collect $3,560.04 as an unpaid balance. | O |
| 8-17-2018 | Bill from Ocwen attempting to collect $4,528.50 as an unpaid balance. | P |
| 8-24-2018 | Ocwen sent the Debtor a letter titled, **"Foreclosure Has Been Initiated"** | Q |
| 9-17-2018 | Bill from Ocwen attempting to collect $6,381.76 as an unpaid balance. | R |

# OCWEN'S BUSINESS MODEL

## OCWEN'S COMPUTER SYSTEM

27.     Ocwen relies heavily on its computer system and electronic database in order to service loans in bankruptcy.

28.     Ocwen inputs loan information into an electronic database, which is referred to as the System of Record.

29.     Systems of Record are necessary for a company like Ocwen to service loans in accordance with applicable bankruptcy rules.

30.     Ocwen uses a default management system called REALResolution ("REAL") for its bankruptcy cases.  (*See Exhibit S and Exhibit T*)

31.     REAL is also designed "to manage borrower bankruptcy from a loan administration perspective." (*See Exhibit U Page 10*)

32.     Between 2014 and 2016, Ocwen hired consultants to assess the effectiveness of REAL, and Ocwen subsequently concluded that REAL lacks the basic system architecture and design necessary to properly service loans.

33.     In 2015, Ocwen's consultants conducted interviews with Ocwen business leaders.  These Ocwen leaders identified 67 items that represented "functional and/or technical deficiencies" that "stem from systematic and manual processes" including a "technical gap causing escrow analysis to be conducted incorrectly" and a "manual bankruptcy workaround for loans acquired already in bankruptcy, causes information to be deleted from history as new information is updated."

34.     By 2016, Ocwen concluded that REAL was broken in multiple ways that adversely affected borrowers whose loans were subject to bankruptcy protections, which includes the

following:

   a. "The process of converting a bankruptcy trustee payment to a payment batch
   is highly manual and, therefore, both inefficient and at risk of error.  Ocwen
   receives funds from bankruptcy trustees that, generally, need to be applied to
   borrower accounts as either pre-petition payments, post-petition payments, or
   bankruptcy interests.  There are some cases where, due to loan status, funds
   from the trustee are not applied as payment, but are applied to miscellaneous
   suspense or other non-payment accounts.  Ocwen receives funds from
   bankruptcy trustees in a single check that usually covers multiple accounts.
   Ocwen needs to apply the funds across the different loans."

   b. "There is no connection between the proof of claim as determined in
   Equator/REALResolution and the pre-petition arrearage balances in
   REALServicing.  The proof of claim figures need to become the
   REALServicing arrearage balances."

## STATEMENTS/TESTIMONY FROM OCWEN'S MANAGEMENT[1]

35.   In 2014, the Head of Ocwen's Escrow Department wrote in an email, which was
subsequently forwarded to Ocwen's CEO:

   **"I've stressed importance of getting the BK escrow balance issues fixed, but no
   confirmation of root cause or target correction date** . . . . It's a system issue because a
   bucket that determines the amount of money that a customer sends for their monthly
   payment can change with no record of why on the system . . . . **Please help get the
   importance across on this issue.** If this is not fixed, I cannot recommend that we move
   to analyze BK for the portfolio. Even with a control report to catch them, there is still risk
   the balance will be wrong when you actually analyze the account. (Emphases added.)

36.   In late 2014, Ocwen's Head of Servicing emailed Ocwen's CEO and stated:

   "you are familiar with this issue - the BK escrow balance bucket is wrong and
   requires every BK loan to be manually reviewed and we can still have errors."

37.   Ocwen's **former** Head of Servicing Compliance testified as follows:

---
[1] Some of the information contained in this section was obtained from the Consumer Financial Protection Bureau
Complaint against Ocwen.

7

"If you have a borrower who is sixty days down or in BK, if an analysis is done and they find that the escrow account is short and the payment has to go up by fifty bucks…..If you've got somebody that's sixty days down or in BK and all of a sudden, because of a shortage in the escrow account, their payment goes up by fifty bucks, that can make a big difference. So it can have a disproportionate impact because they're already on the ropes financially."

## SEC REPORT

38.     OFC, OMS, and Ocwen, through OFC, filed a consolidated financial statement with OFC's public disclosures ("SEC Report").  *See Exhibit V*

39.     According to the SEC Report, OFC made the following disclosures:

a.  OFC must comply with federal and local bankruptcy rules. These laws apply to many facets of OFC's business, including claims handling, escrow balances, and fees assessed on borrowers.

b.  OFC acknowledged, as it relates to federal and local bankruptcy rules, actions of legislative bodies and regulatory agencies may not be consistent and as a result, ensuring ongoing compliance with applicable legal and regulatory requirements can be **challenging** for Ocwen.

c.  In the "ordinary course of business", OFC is a defendant in lawsuits where various Plaintiffs have alleged violations of federal and local bankruptcy rules.

d.  OFC asserted that new regulatory and legislative measures, or changes in enforcement practices, including those related to the technology they use, could, either individually or in the aggregate, require significant changes to their business practices, impose additional costs, limit product offerings, limit their ability to efficiently pursue business opportunities, negatively impact asset values or reduce revenues.

e.  OFC explained that new regulatory and legislative measures could materially and adversely affect their business and financial condition, liquidity and results of operations.

40.     As evidenced by the SEC report, OFC and Ocwen are well aware of their obligation to

8

comply with bankruptcy rules. However, OFC and Ocwen blame alleged legislative inconsistencies for Ocwen's difficulty in complying with federal rules.

41.     There have been no legislative or regulatory changes to the requirements of complying with a bankruptcy discharge injunction.

42.     The Defendant's actions of ignoring the Discharge Injunction and Chapter 13 Confirmation Orders are common and widespread, and part of the Defendant's pattern and practice of servicing loans in and out of bankruptcy.

43.     Instead of changing internal processes and procedures to comply with bankruptcy court orders, Ocwen chooses to simply ignore bankruptcy court orders, and pay debtors' settlement funds IF and WHEN they get caught.

44.     It appears that paying nominal settlement funds is just a cost of doing business for Ocwen.

45.     Below is a sample of Adversary Proceedings filed in **Texas** bankruptcy courts, where Ocwen was sued for violating a bankruptcy court order and subsequently settled the lawsuit for an undisclosed amount.

| ADVERSARY CASE NO. | DEBTORS' ALLEGATIONS AGAINST OCWEN |
|---|---|
| 12-3504 (SDTX) | Violation of Order Deeming Current and Discharge Order (settled) |
| 11-2182 (SDTX) | Violation of Order Deeming Current and Discharge Order (settled) |
| 16-3269 (SDTX) | Violation of Confirmation Order; Discharge Injunction (settled) |
| 15-3310 (SDTX) | Violation of Confirmation Order (settled) |
| 15-3303 (SDTX) | Violation of Confirmation Order, Discharge Injunction, and Order Deeming Mortgage Current. (settled) |
| 16-3014 (SDTX) | Violation of Confirmation Order (settled) |
| 16-3040 (SDTX) | Violation of Confirmation Order, Discharge Injunction, and Automatic Stay. (Settled) |
| 16-3088 (SDTX) | Violation of Confirmation Order, Discharge Injunction, and Order Deeming Mortgage Current and Automatic Stay. (Settled) |
| 16-3269 (SDTX) | Violation of Confirmation Order, Discharge Injunction, and Order Deeming Mortgage Current and Automatic Stay, Agreed Order. (Settled) |
| 17-03257 (SDTX) | Violation of Confirmation Order, Discharge Injunction, and Order Deeming Mortgage Current. (Settled) |
| 16-3138 (SDTX) | Contempt of Court Order (Settled) |
| 17-3053 (NDTX) | Violation of 362 (Settled) |
| 17-3047 (NDTX) | Violation of Order Confirming Plan, Violation of 362 (Settled) |
| 17-1003 (SDTX) | Violation of confirmation order (Settled) |

46.     Ocwen's practice of ignoring court orders is a nationwide problem.  Below is a sample of adversary proceedings filed **nationwide** where Ocwen was sued for violating bankruptcy court orders.  All of the cases listed below were voluntarily dismissed by the Debtors.

| ADVERSARY CASE NO. | BANKRUPTCY COURT | ALLEGATIONS IN DEBTORS' COMPLAINT |
|---|---|---|
| 17-70029 | Northern District of **Alabama** | After Ocwen was show caused for violation of agreement with Debtor, parties entered into undisclosed/confidential settlement agreement. |
| 17-2192 | Eastern District of **California** Sacramento Division | Violation of Confirmation Order and Discharge Injunction (case dismissed) |
| 14-00224 | Middle District of **Florida** Tampa Division | Violation of Automatic Stay and FDCPA (settled) |
| 15-5064 | Middle District of **Georgia** Macon Division | Violation of Confirmation order (case dismissed) |
| 15-3054 | Southern District of **Illinois** East St. Louis Division | Violation of Discharge Injunction |
| 14-57019 | Southern District of **Indiana** Evansville Division | Violation of Automatic Stay and Violation of Confirmation Order (settled) |
| 15-1002 | Eastern District of **Louisiana** New Orleans Division | Violation of Automatic Stay, Breach and Conversion (settled) |
| 15-1036 | Eastern Division of **Massachusetts** | Contempt of confirmation order (dismissed) |
| 14-00152 | Middle District of **Pennsylvania** | Case Settled for loan modification and $1,000.00 in attorney's fees to Debtor's counsel. |

47.     It appears that Ocwen has made the decision that it is more economical for them to pay settlement fees (when and if they get caught) than it is for Ocwen to overhaul their internal policies in order to comply with bankruptcy court orders.

**CONSENT ORDERS ENTERED INTO BY OCWEN (AND IGNORED)**

48.     The Consumer Financial Protection Bureau, and every state in the United States, including the District of Columbia, sued OFC and Ocwen, alleging that OFC and Ocwen violated certain laws.

49.     On December 16, 2013, OFC and Ocwen executed a Consent Judgment.  As part of the Consent Judgment, Ocwen and OFC agreed to the following: (*See Exhibit W*)

     **"In active chapter 13 cases, Ocwen shall ensure that as of the date of an order**

**granting the debtor a discharge, there is a reconciliation of payments received with respect to the debtor's obligations during the case and appropriately update the systems of record, in connection with such reconciliation."**

## PRIOR SANCTIONS AGAINST OCWEN

50.     As further evidence of Ocwen's refusal to comply with nationwide bankruptcy court orders and consent judgments, below is a small sample of sanctions issued by various bankruptcy courts around the country.

      a.  On July 7, 2010, a Bankruptcy Court in the Eastern District of **North Carolina** found it not only appropriate, but necessary to award punitive damages against Ocwen. Judge Humrickhouse ruled as follows, "Ocwen has given every indication that it is and will remain indifferent to the statutory significance of the discharge injunction…unless it is compelled to take note." *See Exhibit X*

      b.  On May 17, 2017, a bankruptcy Court in **New Hampshire** ordered Ocwen to pay a Debtor $44,077.01 for their violation of the discharge injunction. *See Exhibit Y*

      c.  In December, 2017, the United States **BAP for the Ninth Circuit** held that a bankruptcy court did not err in sanctioning Ocwen $119,000.00 for Ocwen's willful violation of the discharge injunction. *Marino v. Ocwen Loan Servicing, LLC, et al.* 577 B.R. 772 (2017).

## CONSUMER FINANCIAL PROTECTION BUREAU

51.     On April 20, 2017, the Consumer Financial Protection Bureau ("CFPB") filed a Complaint against Ocwen in Federal District Court for the Southern District of Florida (the "CFPB Lawsuit").

52.     The CFPB alleged in the CFPB lawsuit that Ocwen routinely fails to process and apply payments correctly in accordance with bankruptcy requirements.

53.     Ocwen is actively participating in the CFPB Lawsuit and is aware of the allegations contained in the Complaint.

54.     Even with all of the pending litigation, sanctions, and complaints filed against Ocwen, Ocwen has failed to do anything to correct and remedy its internal process.

## DAMAGES

55.   Despite Ocwen's actual knowledge of the Debtors' *Confirmation Order, Discharge Injunction,* and *Order Deeming the Debtors' Mortgage Current*, Ocwen :

   a.   Attempted to collect amounts from the Debtor that were cured in their Chapter 13 plan;

   b.   Sent letters demanding payment of amounts that were not due;

   c.   Refused to accept payments from the Debtor;

   d.   Misapplied mortgage payments on the Debtor's loan;

   e.   Initiated foreclosure proceedings;

   f.   Threatened the Debtor with the loss of her homestead;

   g.   Reported negative account history to credit reporting agencies; and

   h.   Charged late fees and interest on amounts cured in the Debtor's chapter 13 plan.

56.   Plaintiffs have incurred the following **actual damages** as a result of Ocwen's actions:

   a.   Attorneys' fees and expenses;

   b.   Ruined credit rating;

   c.   Lost wages and time from dealing with Ocwen prior to the lawsuit;

   d.   Lost wages and time in prosecuting this Adversary Proceeding;

   e.   Emotional damages that include: Lost sleep, anxiety, depression, increased blood pressure, weight gain, and panic;

   f.   Medical bills as a result of the emotional damages described above.

## CAUSES OF ACTION

### SUMMARY

57.   Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

58.   The Debtors asserts that Ocwen intentionally failed to comply with the following orders:

   a.   Discharge Order/Injunction;

   b.   Order Deeming Mortgage Current; and

   c.   Confirmation Order.

   *(Collectively referred to as "the Orders")*

59.   The discharge injunction in this case was implemented by the issuance of a court order.

12

60.     The Debtors assert that Ocwen should be held in Contempt for its violation of the Orders.

61.     A Bankruptcy Court has the authority to enforce its own orders under 11 U.S.C. § 105. *See Ins. Co. of N. Am v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp,* 118 F. 3d 1056 (5th Cir. 1997).

## FAILURE TO COMPLY WITH CONFIRMED CHAPTER 13 PLAN

62.     The factual allegations contained in paragraphs 1 through 60 are hereby incorporated for all purposes.

63.     An *Order Confirming the Debtors' Chapter 13 plan* ("Confirmation Order") was entered on March 21, 2013.

64.     Section 1327 of the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

65.     Ocwen failed to comply with the Confirmation Order by failing to apply the monthly mortgage payments pursuant to the terms of the confirmed chapter 13 plan.

66.     Ocwen actively participated in the Debtors' bankruptcy case.

67.     The Confirmation Order was final and not appealed.

68.     Defendant was provided proper and sufficient notice of the Order.

69.     The Defendant had actual notice of the Order.

70.     The Defendant failed to comply with the terms of the Confirmation Order and should be held in contempt for their actions in violating the Confirmation Order.

71.     It is a nationwide pattern and business practice of Ocwen to:

        a.  Attempt to collect payment in violation of a confirmed chapter 13 plan;

        b.  Misapply payments in violation of confirmed chapter 13 plans; and

        c.  Ignore orders confirming chapter 13 plans.

72.     Due to the willful and intentional acts of the Defendant, the Plaintiffs are entitled to sanctions, actual damages, punitive damages, and injunctive relief.

## VIOLATION OF THE DISCHARGE INJUNCTION

73.    The factual allegations contained in paragraphs 1 through 71 are hereby incorporated for all purposes.

74.    Pursuant to 11 U.S.C. § 524(a)(2), a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor...."

75.    On January 22, 2018, the Debtors received their discharge.

76.    Ocwen's actions toward the Debtor violate Section 524(i).

77.    Section 524(i) states:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

78.    Ocwen's willful failure to credit payments received under the Debtors' Chapter 13 plan constituted a violation of the discharge injunction and Discharge Order.

79.    Ocwen violated the discharge injunction by: 1) Misapplication of plan payments; 2) Failing to apply the monthly mortgage payments pursuant to the terms of the confirmed chapter 13 plan; 3) Demanding fees and costs post-discharge; and 4) Initiating foreclosure proceedings.

80.    The Order granting the Debtors' Discharge was final and not appealed or revoked.

81.    Defendant was provided proper and sufficient notice of the Debtor's Discharge.

82.    The Defendants had actual notice of the Debtor's Discharge.

83.    It is a nationwide pattern and business practice of Ocwen's to willfully fail to credit payments received under confirmed chapter 13 plans.

84.    Defendant should be held in contempt for their actions in violating the Discharge Order/Injunction.

85.    The actions detailed above were willful and intentional, and were in total disregard of the authority of the bankruptcy court.

86.     For willful violations of the discharge injunction, courts have awarded actual damages, emotional distress damages, and attorney's fees. In order to support finding a willful violation of § 524(a)(2), the offending creditor must "(1) know the injunction has been entered, and (2) intend[] the actions that violate it." *In re Contreras,* 2007 WL 273128, at *1 (Bankr.S.D.Tex. Jan. 26, 2007).

87.     Punitive damages may also be awarded when a creditor violates the discharge injunction. Collier at ¶ 524.02[2][c].

88.     A civil contempt order "which compensates a debtor for damages suffered as a result of a creditor's violation [of the discharge injunction] is both necessary and appropriate to carry out provisions of the bankruptcy code." *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.),* 108 F.3d 609, 613 (5th Cir.1997).

## WILLFUL VIOLATION OF THE ORDER DEEMING MORTGAGE CURRENT

89.     The factual allegations contained in paragraphs 1 through 87 are hereby incorporated for all purposes.

90.     The Court entered an Order Deeming the Debtor's Mortgage Current *("Order Deeming Current")* on November 1, 2017.

91.     The Order Deeming Mortgage Current specifically states that Ocwen's claims against the Debtor are deemed current as of October 31, 2017.   The Order also states that all escrow deficiencies are deemed cured and that all legal fees, inspection fees, and other charges imposed by Ocwen are also deemed satisfied in full.

92.     Ocwen violated the *Order Deeming Current* by misapplying payments and demanding fees and costs that were cured in the Debtors' Chapter 13 plan. Ocwen also failed to comply with the Order Deeming Current when they initiated foreclosure proceedings based on payments that were cured pursuant to the Order.

93.     As of November 1, 2017, Ocwen's records showed that debtor's loan is delinquent.

94.     The Order Deeming Mortgage Current was final and not appealed.

95.     Ocwen was provided proper and sufficient notice of the Order Deeming Current.

96.     Ocwen had actual notice of the Order Deeming Current, and actively participated in the hearing on the Trustee's *Motion to Deem Mortgage Current*.

15

97.     Ocwen should be held in contempt for its actions in violating the Order Confirming the Debtors' Chapter 13 plan.

98.     It is a pattern and business practice of Ocwen to attempt to collect payment in violation of *Orders Deeming Mortgage Current*.

99.     It is a pattern and business practice of Ocwen to ignore bankruptcy court's *Orders Deeming Mortgage's Current.*

100.    Due to the willful and intentional acts of the Defendant, the Plaintiffs are entitled to sanctions, actual damages, punitive damages, and their reasonable and necessary attorney fees incurred in prosecuting this complaint.

# DAMAGES

101.    The factual allegations contained in paragraphs 1 through 100 are hereby incorporated for all purposes.

102.    Due to Ocwen's intentional violation of the three Orders detailed above, the Debtors seek damages based on economic harm, emotional damages, punitive damages, and sanctions.

## ECONOMIC HARM

103.    Debtors who have suffered pecuniary losses due to a creditor's willful violation of a discharge injunction may request an award of compensation for actual damages.

104.    Ms. Green is a flight attendant and does not get paid if she is not working.  Due to the nature of Ms. Green's work, she is unable to make personal calls while working.

105.    Ms. Green was forced to take days off from work in order to address Ocwen's attempts to foreclose on her home.  Ms. Green suffered actual economic harm due to Ocwen's violations of this Court's orders.

106.    In addition to the time and effort Ms. Green spent trying to convince Ocwen to accept her payments and not foreclose, Ms. Green also seeks actual damages for the time and effort she spent prosecuting her claims against Ocwen in this Adversary Proceeding.

107.    The Debtors seek reimbursement of attorney's fees and expenses in prosecuting this lawsuit against Ocwen.

## EMOTIONAL DAMAGES

108.    In order for the Debtors to recover damages for emotional distress caused by Ocwen's total disregard and contempt of the Orders, the Debtors must present specific evidence of

16

emotional damage.  *Hitt v. Connell,* 301 F.3d 240, 250 (5th Cir.2002).

109.     Ms. Green has suffered severe stress and emotional consequences including anxiety, depression, loss of sleep, nervousness, increased blood pressure, and weight gain from Ocwen's continued attempts to collect discharged debt, misapplication of mortgage payments, refusal to accept mortgage payments, and initiating foreclosure proceedings.

110.     Ms. Green has incurred medical bills to address the emotional consequences that were a direct result of Ocwen's intentional disregard for this Court's orders.

### PUNITIVE DAMAGES

111.     In addition to actual damages, the Debtors seek punitive damages against Ocwen for their willful and intentional violations of the three bankruptcy orders.

112.     "Punitive damages punish. The almost unanimous rule is that "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." See *Allen v. R&H Oil & Gas Co*., 63 F.3d 1326, 1332 (5th Cir. 1995).

113.     In determining whether to award punitive damages, this Court previously looked to the 5th Circuit standard of awarding punitive damages in automatic stay violation cases.  *In re Fauser*, 545 B.R. 907 (Bankr. S.D.Tex. 2016).

114.     The Fifth Circuit requires "egregious, intentional misconduct on the violator's part" in order to award punitive damages in stay violation cases. *In re Repine*, 536 F. 3d 512, 521 (5th Cir. 2008).

115.     Here, Ocwen was well aware of Ms. Green's bankruptcy filing and despite having actual knowledge of the debtor's bankruptcy and discharge, Ocwen continued its collection efforts and misapplication of the Debtor's payments.

116.     The Debtors should be awarded punitive damages for Ocwen's attempts to collect after being provided with actual affirmative notice.  In addition to the phone calls, Ocwen sent the Debtor numerous bills attempting to collect on the discharged debt.

117.     Each letter sent by Ocwen to the Debtor (*See Exhibit J thru R)* is a willful and egregious violation of the Orders.

118.     Ocwen has admitted that complying with federal and local bankruptcy rules is

challenging.  Ocwen has admitted that they are sued in the "ordinary course of business" for violating bankruptcy requirements.

119.    However, Ocwen has done absolutely nothing to change their internal practices and guidelines regarding violating bankruptcy court orders.

120.    Ocwen must be punished in order to prevent it from continuing to violate bankruptcy court orders.

121.    Other Courts have ordered punitive damages against Ocwen.  For example, a jury in the United States District Court, Southern District of West Virginia awarded $2.5 million in punitive damages for Ocwen's willful violations the Fair Credit Report Act.

122.    In April, 2018, Monette Saccameno secured a jury verdict against Ocwen in Illinois, and obtained $3 million in punitive damages.

123.    OFC has over $18 billion dollars in revenue and Ocwen will only change its behavior when a punitive damage award is significant enough to force Ocwen to change its business practices.  It appears that $3 million in punitive damages may not be large enough to persuade Ocwen to abide by this Court's orders.

124.    Furthermore, Ocwen's acts should be subject to exceptional scrutiny due to the fact that their average customers are unsophisticated consumers who may never know that they are being taken advantage of.

<u>**SANCTIONS**</u>

125.    Pursuant to Section 105, the Debtor seeks an award of sanctions against the Defendant for contempt of the Orders.

126.    Compensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates Section 524(a)(2) injunction.  *See In re Sandburg Fin.Corp.*, 446 B.R. 793, 803 (S.D.Tex.2011).

127.    A creditor violates the discharge injunction if it (1) knows that the injunction has been entered; and 2) intends the actions that violate it.  The creditor does not need to intend to violate the discharge injunction, but intend to commit the acts that violate the discharge injunction. *Mahoney v. Wash. Mut. Inc.*, 368 B.R. 579, 587 (Bankr. W.D. Tex. 2007).

128.    Here, there is no doubt that Ocwen had notice of the discharge injunction, and intentionally violated the discharge injunction.

129.    Here, there is no doubt that Ocwen had notice of the *Order Deeming Current* as Ocwen actively participated in a hearing related to the Trustee's *Motion to Deem the Mortgage Current.* Ocwen's counsel appeared at the hearing and represented Ocwen.

130.    Ocwen's intentional disregard for the discharge injunction and confirmation order is a systemic problem and occurs in nearly every state in the country.

131.    The Fifth Circuit has held that Section 105(a) authorizes bankruptcy courts to enter orders to enforce the discharge injunction imposed by Section 524. *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 n. 1 ( 5th Cir. 2008)

<u>INJUNCTIVE RELIEF</u>

132.    The Debtors also seek injunctive relief and request that Ocwen be enjoined from seeking further collection of the debt discharged in the Chapter 13.

133.    The Fifth Circuit has recognized that § 105(a) grants bankruptcy courts the authority to grant injunctive relief. *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.),* 378 F.3d 511, 523 (5th Cir.2004).

134.    If Ocwen continues to harass the Debtors, damages alone will not compensate the Debtors, due to the stress caused by Ocwen's harassment and threats of foreclosing taking the Debtors' home.

            WHEREFORE, the Plaintiffs, having set forth their claims for relief against the Defendant, prays of this Court the following:

    a)    That Defendant be **ORDERED** to pay the Debtors actual and punitive damages;

    b)    That Defendant be **ORDERED** to pay sanctions;

    c)    That Defendant be **ORDERED** to take all steps necessary to immediately cease all collection actions against Plaintiffs.

    d)    That Defendant be **ORDERED** to take all steps necessary to fix any negative information regarding this debt that has occurred on Plaintiffs credit report post-bankruptcy filing.

e)      That Defendant be **ORDERED** to stop any foreclosure actions against the Debtor's property.

f)      That Defendant is **ENJOINED** from seeking further collection of the discharged debt in the Chapter 13 case.

g)      All other and further relief as is just.

Dated: <u>December 14, 2018</u>

Respectfully submitted,

By: <u> /s/ Miriam Goott </u>
        Miriam Goott
        attorney-in-charge
        SBN 24048846
        COUNSEL FOR THE
        DEBTORS

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
(713) 956-5570 (fax)
mgoott@walkerandpatterson.com